UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATRICIA YABLON, | CASE NO. C14-5857JLR |
| Plaintiff, | ORDER |
| v. | |
| CAROLYN COLVIN, | |
| Defendant. | |

## I.     INTRODUCTION

Plaintiff Patricia Yablon appeals the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Supplemental Security Income ("SSI") after a hearing before an Administrative Law Judge ("ALJ").  Having considered the parties' briefs, the administrative record ("AR"), and the relevant law, and being fully advised, the court AFFIRMS the Commissioner's final decision and DISMISSES this case WITH PREJUDICE.

ORDER- 1

## II.   BACKGROUND

Ms. Yablon was born on XXXX, 1965.[1]  She received her GED and worked a few months as a groundskeeper.  (AR at 63, 84.)  Ms. Yablon applied for SSI on August 26, 2008, alleging disability as of January 1, 2007.  (AR at 27, 333.)  That application was denied initially and on reconsideration.  (AR at 159-62, 166-68.)  Ms. Yablon timely requested a hearing.  (AR at 169-70.)

On July 21, 2011, ALJ Mattie Harvin-Woode held a hearing in Seattle, Washington, taking testimony from Ms. Yablon and a vocational expert ("VE").  (AR at 99-130.)  On September 14, 2011, the ALJ issued a decision finding Ms. Yablon not disabled.  (AR at 36-47.)  Ms. Yablon timely appealed.  The Appeals Council granted Ms. Yablon's request for review and vacated the decision.  (AR at 155-57.)  The Appeals Council remanded the case to the ALJ to (1) address all opinions concerning Ms. Yablon's mental health including the opinion that she would have trouble completing a normal work week, would have difficulty with the usual work stress, and may have difficulty with regular attendance; (2) discuss the non-medical source opinions stating that Ms. Yablon had marked limitations for numerous mental work functions; (3) further evaluate possible manipulative limitations; (4) obtain additional evidence concerning Ms. Yablon's mental impairments, including medical expert evidence if necessary; and (5)

---

[1] Ms. Yablon's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

reconsider the residual functional capacity ("RFC") and obtain supplemental evidence from a VE as needed. (AR at 155-57.)

On June 5, 2013, ALJ Scott R. Morris held a hearing in Tacoma, Washington, with testimony from Ms. Yablon and a VE. (AR at 27.) The ALJ found Ms. Yablon not disabled in a written decision issued August 30, 2013. (AR at 27-41.) The Appeals Counsel denied review, making the ALJ's written decision the final decision of the Commissioner. (AR at 1-3.) Ms. Yablon appealed the final decision of the Commissioner to this court. The court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found that Ms. Yablon had not engaged in substantial gainful activity since her application date of August 26, 2008. (AR at 29.) At step two, the ALJ must determine whether a claimant suffers from a severe impairment. Here, the ALJ found that Ms. Yablon suffered from the severe impairments of chronic obstructive pulmonary disease, degenerative joint disease of the right knee, asthma, methamphetamine dependence in reported remission, drug and alcohol related anxiety disorder, not otherwise specified, and post-traumatic stress disorder. (*Id.*) Ms. Yablon also suffers from a variety of non-severe impairments including headaches, bilateral wrist tendonitis, symptoms from multiple abdominal surgeries, and generalized ankle pain. (AR at 30.)

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Ms. Yablon's impairments did not meet or equal the criteria of a listed impairment. (AR at 30-32.) Because Ms. Yablon's impairments did not meet or equal a listing, the ALJ assessed a RFC to determine whether Ms. Yablon had demonstrated an inability to perform past relevant work as required by step four of the disability analysis. The ALJ found Ms. Yablon capable of performing a range of light work, with the following exertional limitations: she can stand and/or walk at least two hours but less than six hours of an eight hour workday; she can occasionally climb ropes, ladders, or scaffolds, and frequently climb ramps and stairs; she should avoid concentrated exposure to vibration and fumes and even moderate exposure to pulmonary irritants; she can perform simple, routine tasks with occasional changes in the work setting, superficial interaction with the public, and occasional interaction with co-workers. (AR at 32.) With this assessment, the ALJ found Ms. Yablon unable to perform her past relevant work as a groundskeeper. (AR at 39.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Here the ALJ proceeded to step five. Based on the testimony of a VE, the ALJ found Ms. Yablon capable of performing several representative jobs such as flagger, house sitter, and garment sorter. (AR at 40.) Additionally, the VE identified jobs at a more restrictive (sedentary) exertional level that Ms. Yablon could perform. (*Id.*) As a result of these findings, the ALJ determined that Ms. Yablon was not disabled. (*Id.*)

# III.   ANALYSIS

## A.   Standard of Review

This court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation of the evidence, one of which supports the ALJ's decision, the court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## B.   Ms. Yablon's Arguments

Ms. Yablon argues that the ALJ erred by (1) improperly determining that Ms. Yablon's anxiety was severe only when paired with drug and alcohol abuse; (2) discounting Ms. Yablon's credibility; (3) rejecting the opinions of treating and examining physicians; (4) rejecting the opinions of lay mental health providers; (5) failing to properly determine Ms. Yablon's RFC; and (6) relying on VE testimony in response to inaccurate hypotheticals. (Op. Brief (Dkt. # 14) at 1-2.) According to Ms. Yablon, the court should remedy these errors by remanding for payment of benefits, not additional proceedings. (*Id.* at 16-17.)

1. <u>Drug and alcohol related anxiety disorder</u>

The ALJ determined that Ms. Yablon had the severe impairment of drug and alcohol related anxiety disorder, not otherwise specified. (AR at 29.) Ms. Yablon

contends that the ALJ cited no evidence for the conclusion that her anxiety is severe only when related to drugs and alcohol. (Op. Brief at 2.) She alleges that the "use of the phrase is in error and is prejudicial and should be stricken." (*Id.* at 3.)

The party challenging the agency's determination has the burden to show that prejudice resulted from an alleged error. *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2010). This requires a showing that the alleged error affected a substantial right. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Here, Ms. Yablon fails to meet this burden. She has not shown that reference to her anxiety as "drug and alcohol related" resulted in any impact on the consideration of her anxiety as a severe impairment. Furthermore, she has not demonstrated that the severe impairment, as defined, led to different RFC limitations than would have been assessed for any other type of anxiety. Without a showing of prejudice, Ms. Yablon has not demonstrated error requiring reversal.

    2.  <u>Ms. Yablon's credibility</u>

The ALJ discounted Ms. Yablon's credibility because of inconsistencies between her allegations of disability and her treatment record, and among her various statements and reports. (AR at 33-35.) Ms. Yablon alleges that the ALJ misstated evidence and "failed by relying upon inconsistent testimony without providing any connection or indication as to how isolated facts relate to inconsistency regarding her medical impairments." (Op. Brief at 13.) Ms. Yablon contends that her statements concerning her impairments should be credited based upon the consistency of the medical evidence. (*Id.* at 14.)

ORDER- 6

The ALJ is responsible for determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding her subjective symptoms. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ "may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Id.* However, "[in] determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ found that Ms. Yablon had made various inconsistent statements. The ALJ gave great weight to the opinion of Leslie Postovoit, Ph.D., who reviewed Ms. Yablon's medical record for the Social Security Administration. (AR at 36.) Dr. Postovoit noted that "[claimant's] [medical evidence review] is confusing because [claimant] is not consistent in what she relates." (AR at 540.) Among the examples cited, Dr. Postovoit noted that Ms. Yablon's stories varied with respect to her separation from her husband and the source of an ankle injury; she reported feeling uneasy watching television but also reported regularly watching three to four hours of television; and she said she often got lost but drove to various emergency departments without incident. (*Id.*)

The ALJ noted further inconsistencies concerning Ms. Yablon's care of her grandchild. (AR at 35.) During the recent ALJ hearing, Ms. Yablon testified that she had

watched her grandchild only once or twice a month if needed.  (AR at 56.)  She then corrected herself, stating that she had cared for the baby for approximately six months after she was born while the parents were also at home.  (AR at 56-57.)  This differs significantly from her testimony during the prior ALJ hearing in 2011 when she testified that she was not babysitting and had not watched her grandchild in the past few years.  (AR at 109.)  Further, the testimony from both hearings conflicts with the information in Ms. Yablon's therapy records which shows that Ms. Yablon served as a caregiver for her grandchild for several months.

In January 2010, Ms. Yablon reported that she enjoyed babysitting her granddaughter and planned to move in with her son to provide day care in exchange for a place to live.  (AR at 668.)  In June 2010, Ms. Yablon reported to her therapist that she babysat her grandchild throughout the week and was "happy with this arrangement though tired from all the work."  (AR at 642.)  By August 2010, Ms. Yablon was "getting bored taking care of the baby."  (AR at 612.)  But, she continued to care for the baby while staying at her son's house into October of that year.  (AR at 630.)  While these details of Ms. Yablon's time as babysitter may not be medically relevant, the variability of her statements casts doubt on her credibility as a whole.  Such conflicting statements are properly considered when assessing credibility and provide a clear and convincing reason to discredit Ms. Yablon's statements.  *See Burch*, 400 F.3d at 680.

Additionally, the ALJ discounted Ms. Yablon's credibility because the objective medical records were also inconsistent with her allegations of disability.  While subjective symptom testimony cannot be rejected solely because it is not fully

corroborated by objective medical evidence, medical evidence is still a relevant factor in determining severity of symptoms and their disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). In this case, Ms. Yablon claimed that her back is "terrible" and hurts all the time. (AR at 68.) She testified that she could only walk one block before needing to sit and could only stand for five minutes before shifting and pacing to find a comfortable position. (AR at 70-71.) Despite this testimony, Yablon's medical records show little objective evidence to support this allegedly disabling back pain.

      Dr. William Triplett conducted a physical evaluation in September 2009. (AR at 458-64.) His neurological assessment and examination of Ms. Yablon's back and spine proved unremarkable. (AR at 463.) He noted the lack of objective medical evidence of limitations on agility, mobility, and flexibility, stating "no proof, just subjective complaints." (AR at 459.) The results of a December 2008 physical examination by Dr. Rex Alvord proved similar. (AR at 466-71.) Ms. Yablon could get into and out of a chair without difficulty. (AR at 468.) She had tenderness over her lower lumbar areas with some limitation in range of motion due to pain, a slightly antalgic gait, and difficulty walking on heels and toes. (AR at 469.) However, her straight leg raises were negative (AR at 469), and x-rays of her lumbar spine were normal (AR at 472). Dr. Alvord diagnosed lumbosacral strain. (AR at 471.) Additional examinations showed tenderness in the lumbar spine but normal flexion and no motor weakness. (AR at 863, 886.) She had been alternately diagnosed with muscle spasms and lumbar strain. (AR at 863, 471.)

These mild diagnoses and Dr. Triplett's assessment of "no proof, just subjective complaints" are substantial evidence in support of the ALJ's conclusion that the record lacks objective medical evidence to support Ms. Yablon's claims of disabling back pain. Furthermore, the dearth of objective evidence, combined with Ms. Yablon's various inconsistent statements, provides clear and convincing reasons to discount Ms. Yablon's credibility. *See Rollins*, 261 F.3d at 857; *Burch*, 400 F.3d at 680. As such, the ALJ did not err in assessing Ms. Yablon's credibility.

### 3. Medical evidence

Ms. Yablon contends that the ALJ erroneously ignored consistent psychological reports that her anxiety and depression resulted in an inability to tolerate the pressures of a normal work day and, instead, relied on "isolated portions of the state agency physicians' conclusions" to deny the claim. (Op. Brief at 3.) The Commissioner argues that the ALJ properly discussed and weighed the medical evidence. (Resp. (Dkt. # 15) at 9.) The ALJ considers medical opinions with all the relevant evidence when evaluating disability. 20 C.F.R. § 404.1527(b). Where an examining physician's opinion is uncontradicted, the ALJ may reject that opinion only for "clear and convincing reasons." *Lester*, 81 F.3d at 830-31. Where, as here, an examining physician's opinion is contradicted, the ALJ may reject that opinion only for "specific and legitimate" reasons that are supported by substantial evidence in the record. *Id*. at 831. Ms. Yablon alleges that the ALJ rejected several examining physician opinions without the requisite specific and legitimate reasons based on substantial evidence.

*a. Colin Dauria, M.D.*

Dr. Colin Dauria performed a psychological evaluation in January 2009. (AR at 509-13.) He opined that Ms. Yablon would be able to perform simple and repetitive tasks and accept instruction from supervisors. (AR at 513.) However, she would have difficulty interacting with co-workers and "[s]he may have difficulty attending work regularly as she has a history of isolating and she would have trouble completing a normal work week due to her history of anxiety and psychotic symptoms." (*Id.*) Dr. Dauria also thought Ms. Yablon would have difficulty with the usual stress of a competitive work environment. (*Id.*)

The first ALJ gave some weight to this opinion, stating that Dr. Dauria opined that Ms. Yablon "would be able to perform simple and repetitive tasks that were not complex and detailed or in an environment with many co-workers or high stress." (AR at 144.) The decision made no mention of Dr. Dauria's assessment that Ms. Yablon would have difficulty completing a normal work week or dealing with the stress of a competitive work environment. (AR at 140-45.) The Appeals Council noted this issue for resolution upon remand. (AR at 155 ("[T]here is no consideration concerning the opinions that the claimant would have trouble completing a normal work week, would have difficulty with usual work stress in a competitive work environment, and may have difficulty attending work regularly.").) The Appeals Council determined that "[g]iven the additional opinion for the claimant's ability to do simple, repetitive work tasks, further development is warranted to adequately address all of these opinions." (*Id.*)

The second ALJ decision discussed and dismissed Dr. Dauria's opinion and his assessment of Ms. Yablon's ability to complete a work week and handle stress. The ALJ reasoned that Dr. Dauria's "opinion regarding the claimant's ability to attend work is not consistent with the claimant's own self-reported activities. For example, as noted above, the claimant reported living an independent lifestyle that involved caring for herself, grocery shopping, driving, cooking, and caring for her grandchild." (AR at 36.) Ms. Yablon contends that these activities are not inconsistent with her claims of total disability. (Op. Brief at 5.)

The ALJ did somewhat overstate Ms. Yablon's activities of daily living. Indeed, some aspects of her "independent lifestyle" appear to result from necessity, as she is homeless and lives in her car. (AR at 66, 511.) Moreover, the Ninth Circuit has acknowledged that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Nevertheless, the record shows that Ms. Yablon served as caregiver for her grandchild for several months. (AR at 612, 630, 642, 668.) She told her therapist that she was tired from the work but happy with providing care for her granddaughter. (AR at 641.) Her ability to successfully and contentedly provide regular daycare for her grandchild conflicts with Dr. Dauria's assessment that she might struggle to complete a normal workday and cope with stress. This inconsistency between Ms. Yablon's level of activity and Dr. Dauria's opinion is a specific and legitimate reason to reject the opinion. *See*

*Rollins*, 261 F.3d at 856 (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

      b.  *Loren McCollom, Ph.D.*

Dr. Loren McCollom provided a mental health evaluation in December 2012, after remand from the Appeals Council. (AR at 830-42.) The medical source statement of ability to do work-related activities rated Ms. Yablon as moderately impaired in her ability to understand, remember, and carry out simple instructions. (AR at 830.) She had marked limitations in her ability to interact appropriately with the public, co-workers, and supervisors, as well as her ability to respond appropriately to usual work situations and changes in a routine work setting. (AR at 831.) The ALJ acknowledged Dr. McCollom's assessment of these marked impairments but gave that assessment little weight because "Dr. McCollom saw the claimant only once, and he relied on her statements regarding her abilities, which are not entirely credible." (AR at 37.) Ms. Yablon contends that the ALJ failed to offer a medical basis for rejecting Dr. McCollom's report and, therefore, did not provide a specific and legitimate reason for giving his opinion little weight. (Op. Brief at 8.)

Ms. Yablon misconstrues the standard for rejecting an examining medical expert opinion. The ALJ need not provide a "medical basis" to reject such an opinion. Rather the ALJ must provide a specific and legitimate reason supported by substantial evidence in the record. *See Lester*, 81 F.3d at 831. In this case, one of the reasons cited by the ALJ was Dr. McCollom's reliance on Ms. Yablon's self-reports, which is an appropriate reason for rejecting an examining physician's opinion. (AR at 37.) An ALJ may reject a

physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

While Dr. McCollom conducted basic mental status testing, the report included direct quotations from Ms. Yablon, as well as information that could not be independently gathered by the doctor. For example, Dr. McCollom reports, "[w]ithin the past seven days, Ms. Yablon has experienced the following symptoms: anxiety, apprehension, irritability, fatigue, muscle tension, difficulty falling asleep, difficulty with concentration, feeling on edge, weight loss, sadness, depression, suicidal ideation, loss of interest in social activities, spending more time alone, and psychomotor retardation/agitation." (AR at 837-42.) Given Dr. McCollum's single visit with Ms. Yablon, this list of symptoms experienced over a week necessarily came from her self-reports. Substantial evidence thus supports the ALJ's characterization of Dr. McCollom's opinion as based on Ms. Yablon's self-reports. Furthermore, as noted above, the ALJ properly discounted Ms. Yablon's credibility; therefore, the ALJ did not err by disregarding Dr. McCollom's medical opinion.

       *c. William P. Triplett, M.D.*

Dr. William Triplett provided a physical evaluation in September 2008. (AR at 458-64.) Dr. Triplett included the diagnosis of moderate to marked Post-Traumatic Stress Disorder. (AR at 460.) The ALJ gave little weight to Dr. Triplett's evaluation because he only examined Ms. Yablon once, his opinion was inconsistent with his own findings, and he provided no clinical support for his opinion. (AR at 38.) Ms. Yablon

contends that the ALJ erred by failing to mention the PTSD diagnosis. (Op. Brief at 6.) However, "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Triplett's physical evaluation is just such a brief opinion lacking support in clinical evidence. Dr. Triplett gave no foundation for the PTSD diagnosis. The physical evaluation merely mentions problems and diagnoses without any objective proof. (AR at 458-64.) In fact, as noted above, Dr. Triplett himself reported that Ms. Yablon's physical limitations were based on subjective complaints that lacked proof. (AR at 459.) Given the brief, conclusory nature of the opinion and the absence of objective support, the ALJ properly discounted Dr. Triplett's opinion, including the PTSD severity rating.

    4. <u>Lay witness evidence</u>

Ms. Yablon disputes the ALJ's treatment of the opinions provided by Lisa Bach, M.H.P, and Marianne Kampf, A.R.N.P. Medical practitioners such as therapists and nurse practitioners are considered "other sources" under 20 C.F.R. § 404.1513(d)(1). Other sources are lay witnesses, whose opinions the ALJ may reject by giving germane reasons. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

    *a. Lisa Bach, M.H.P.*

Ms. Bach provided psychological evaluations in October 2008 and January 2009. (AR at 514-23.) In both assessments, Ms. Bach rated Ms. Yablon as moderately limited in most cognitive and social factors and markedly limited in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting.

(AR at 516, 521-22.) The ALJ gave little weight to Ms. Bach's opinion because she saw Ms. Yablon only one time, and "did not provide any narrative support for her conclusions that would explain the discrepancies between her opinion and the claimant's treatment record." (AR at 38.) Ms. Yablon contends that Ms. Bach saw her twice as reflected by the two assessments, and that "all of these opinions taken together provide substantial evidence to support limitations upon which there is uniform agreement." (Op. Brief at 6.)

The ALJ incorrectly stated that Ms. Bach had seen Ms. Yablon only one time. However, this was not the sole basis for the ALJ's assessment of Ms. Bach's opinion. The ALJ also concluded that Ms. Bach failed to provide narrative support for her conclusions. (AR at 38.) As noted above with respect to medical source opinions, the ALJ is not required to accept opinions that are brief, conclusory, and inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216. Here, Ms. Bach provided check-box information and described the basis for the ratings as chart review and one-on-one consultation. (AR at 516, 521-22.) She gave no objective evidence to support her conclusions. This lack of factual support is a germane reason for rejecting a lay opinion. The ALJ did not err in his assessment of Ms. Bach's psychological evaluations.

      b. *Marianne Kampf, A.R.N.P.*

Ms. Kampf assessed Ms. Yablon as having marked limitations in almost all cognitive and social factors. (AR at 595.) She based these ratings on Ms. Yablon's anxiety, which negatively impacts her ability to concentrate, and her combined anxiety and mood swings, which affect her ability to relate to others, tolerate and manage the pressures of a normal work setting, and maintain appropriate behavior in a work setting.

1  (*Id.*)  The ALJ gave little weight to this opinion because "Ms. Kampf merely checked

2  boxes off on a form and did not provide explanations for the discrepancies between her

3  opinion and the treatment record.  Her opinion is inconsistent with the claimant's

4  performance on mental status examinations, her presentation at appointments, and her

5  reported activities."  (AR at 38.)  Ms. Yablon argues that Ms. Kampf provided narratives

6  in support of the ratings, and that the asserted inconsistencies lack supported in the

7  record.  (Op. Brief at 7.)  "In addition, these vague references without conflicting medical

8  opinions are not the clear and convincing reasons that are required."  (*Id.*)

9        First, Plaintiff errs in defining the standard for properly rejecting Ms. Kampf's

10  opinion.  As noted above, Ms. Kampf is an "other source," or lay witness, rather than an

11  acceptable medical source.  *See Molina v. Astrue*, 674 F.3d 1104, 1111 (2014).

12  Accordingly, only a germane reason is required to reject her opinion evidence.  *See*

13  *Dodrill*, 12 F.3d at 919.

14        Second, the ALJ provided a germane reason for rejecting Ms. Kampf's opinions.

15  The ALJ found that Ms. Kampf's opinions were inconsistent with the results of the

16  mental status exam conducted during the evaluation.  Ms. Kampf assessed severe

17  limitations, yet her mental status exam was largely unremarkable.  (AR at 598.)  While

18  Ms. Yablon's recent and remote memory were impaired, her immediate memory was

19  intact and she showed no cognitive impairments.  (*Id.*)  Ms. Yablon's thought process

20  was appropriate, logical, and connected; her psychomotor activity was within normal

21  limits; and her speech and language showed normal rate and rhythm.  (*Id.*)  These normal

22  mental status exam results differ significantly from the assessed limitations in her

ORDER- 17

cognitive and social functioning. (AR at 595.) For example, while the mental status exam showed no cognitive impairments, Ms. Kampf opined that Ms. Yablon was markedly impaired in her ability to understand, remember, and follow simple instructions. (*Id.*) Ms. Kampf stated that "anxiety negatively impacts claimant's ability to concentrate," yet this impact was not identified during the mental status exam. (*Id.*) Thus, the objective medical evidence does not appear to support Ms. Kampf's assessment of Ms. Yablon's limitations. This conflict between opinion and medical evidence is a germane reason to reject a lay opinion. *See Molina*, 674 F.3d at 1112. The ALJ did not err in his assessment of Ms. Kampf's psychological evaluation.

    5. <u>RFC formulation and VE testimony</u>

Finally, Ms. Yablon asserts that the ALJ incorrectly formulated her RFC and relied on flawed VE testimony based on a hypothetical that did not reflect all her limitations. (*See* Op. Brief at 10-12, 14-16.) These arguments are merely restatements of the previously addressed arguments concerning the properly discounted evidence. As such, these arguments fail to establish error. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

//

//

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court AFFIRMS the final decision of the Commissioner and DISMISSES this case WITH PREJUDICE.

Dated this 13th day of July, 2015.

JAMES L. ROBART
United States District Judge